IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal Action No. **3:13-CR-094-L** |
| | § | |
| CHARLES WILSON ALLEN | § | |

## MEMORANDUM OPINION AND ORDER

On June 16, 2015, the court held a hearing to determine the appropriate course of action to take with respect to whether Defendant Charles Wilson Allen's ("Defendant" or "Mr. Allen") should be release from custody. In light of the unique nature of this action, the court provides a short chronology of the events that have taken place.

Mr. Allen was indicted on March 19, 2013, for attempted bank robbery in violation of 18 U.S.C. § 2113(a). On March 6, 2013, Judge Irma Carrillo Ramirez ordered an evaluation of Mr. Allen. In a report, dated May 13, 2013, the psychologist determined that Mr. Allen was not competent to stand trial. *See* Court's Ex. 1. As a result, the court concluded that Mr. Allen suffered from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him or to assist his defense properly. On July 1, 2013, the court granted the psychologist's recommendation that Mr. Allen be transferred to a Federal Medical Center in the Federal Bureau of Prisons in an effort to restore him to competency. This transfer was pursuant to 18 U.S.C. § 4241(d) for a period not to exceed four months.

The Bureau of Prisons ("BOP") issued a second report on December 2, 2013, and concluded that there was no substantial probability that, in the foreseeable future, Mr. Allen would attain the capacity for trial to proceed. *See* Court's Ex. 2. The court agrees with this conclusion of the BOP.

The court held a hearing on January 29, 2014, and issued an order on January 31, 2014, that Mr. Allen be committed to the custody of the Attorney General for a period of time not to exceed 45 days to conduct a psychiatric or psychological examination of Mr. Allen to determine whether he is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another person.

In the third report issued by the BOP, dated June 26, 2014, the BOP determined that Mr. Allen did not meet the criteria for civil commitment in accordance with 18 U.S.C. § 4246, and it specifically concluded, "[A]lthough Mr. Allen is presently suffering from a mental disease or defect, it is not likely that his release from Federal Bureau of Prisons would create a substantial risk of bodily injury to another person or serious damage to the property of another." *See* BOP Report 14, Court's Ex. 3. The report also stated, "[A]lthough beyond the scope of the current Court Order, we feel it is important to recommend that Mr. Allen be placed in a highly structured residential treatment facility should he be released into the community," and it noted that Mr. Allen agreed with this recommendation. *Id.* The court held hearings on October 2, 2014, and February 18, 2015, and invited input from the parties. Input, at best, was minimal, and no resolution was reached after these hearings.

The court determines that this case is governed by 18 U.S.C. § 4246, as set forth in 18 U.S.C. § 4241(d), which states that Defendant is subject to the provisions of sections 4246 and 4248.

**Memorandum Opinion and Order - Page 2**


This is so because the court has concluded that Mr. Allen meets the criteria set forth in 18 U.S.C. § 4241(a) and that there is not a substantial probability that his competency will be restored in the foreseeable future. Section 4248 clearly does not apply, as it applies to the civil commitment of a sexually dangerous person. Mr. Allen is not a sexually dangerous person and, therefore, does not fall within this category. Accordingly, 18 U.S.C. § 4246(e) is the applicable provision governing Mr. Allen's case.

The requirements necessary for the court's application of section 4246(e) are met. Although there is no certificate *per se* from the warden or director of either facility stating that Mr. Allen has recovered from his mental defect or that his release no longer creates a substantial risk of bodily injury to another person or serious damage to the property of another, there are two signed and written statements from the wardens of the facilities where Mr. Allen was treated, and the court determines that these signed statements have the functional equivalence of a certificate. *See Ecker v. U.S.*, 575 F.3d 70, 79 (1st Cir. 2009) ("Notably, the statute does not prescribe what form the certification should take, and we believe this letter is sufficient."). Accordingly, the court determines that this condition of section 4246(e) has been met.

With section 4246(e) governing the analysis, the court next determines whether it should release Defendant under section 4246(e)(1) or conditionally release him under section 4246(e)(2). Strictly speaking, a wholesale adoption of the BOP's final recommendation to the court would result in Defendant's outright release under section 4246(e)(1), as the BOP stated that Mr. Allen's release would not likely create a substantial risk of bodily injury to another person or serious damage to the property of another. *See* BOP Report 13, Court's Ex. 3. The report, however, admonishes the court to place Mr. Allen in a highly structured residential treatment facility. *Id.* Based on the report's

strongly-worded qualification to its recommendation and the court's review of the three BOP reports, the court concludes that an unconditional release is not appropriate for Mr. Allen.

The court rejects the BOP's finding that Mr. Allen is not suffering from a mental disease or defect as a result of which his release would likely create a substantial risk of bodily injury to another person or serious damage to the property of another. On the one hand, the BOP makes a conclusion that there is not a substantial risk, and, on the other hand, it strongly recommends that Mr. Allen be placed in a "highly structured residential treatment facility" if the court decides to release him into the community. According to the BOP, placement in a highly structured environment, along with familial support, likely will ensure treatment compliance and reduce his risk of recidivism. A common-sense reading of the BOP's conclusion and its recommendation convinces the court that the two are inextricably intertwined and that the BOP in reality is saying that Mr. Allen poses no substantial risk as long as he takes his medications and resides in a highly structured environment. Mr. Allen, as documented, has impulsive behavior, and, according to the BOP, placement in a highly structured treatment facility would assist Mr. Allen in managing his impulsive behavior.

Further, given Mr. Allen's conduct and criminal history, the court is not convinced that he poses no substantial risk of bodily injury to another person. The record reflects that Mr. Allen has a history of crimes of violence. He robbed a store at age sixteen; was convicted of misdemeanor burglary at age 24; was convicted of two felonies for burglary, one in 2005 and the other in 2009. Moreover, the offense for which he has presently been indicted is a crime of violence. Given Mr. Allen's impulsive behavior and his criminal history, the court concludes that the risk to the public is simply too great for him to be released unconditionally. Thus, the court rejects the recommendation of the BOP's report to the extent it would result in Mr. Allen's release under

**Memorandum Opinion and Order - Page 4**

section 4246(e)(1), and it will, instead, order that Mr. Allen be conditionally released pursuant to section 4246(e)(2).

At the hearing held on June 16, 2015, the court heard testimony from Ms. Lynn Alexander, who is the director and chief executive officer ("CEO") of Give Me a Chance Boarding Home. The court concludes that her facility meets the definition of a "highly structured treatment facility." In particular, the facility, as documented at the hearing, is a residential facility where Mr. Allen's behavior will be monitored and where he will be given appropriate psychotropic medications. As stated in the record, staff at the facility transport the residents to and from their scheduled psychiatric appointments, and the facility has specific rules for residents when they leave the facility. Further, the facility has a ten o'clock-curfew for weekdays and an eleven o'clock-curfew for weekends.

Accordingly, the court **directs** the warden of the Federal Correctional Institution in Seagoville Texas, to **release** Defendant Charles Wilson Allen to Ms. Lynn Alexander, the CEO of Give Me a Chance Boarding Home. The release shall take place by **5 p.m.** on **June 29, 2015**. The warden and Ms. Alexander, or her designee, shall coordinate the release of Mr. Allen consistent with this order.

*Mr. Allen is released subject to the following terms and conditions*:

1. Mr. Allen shall reside at Give Me a Chance Boarding Home, located at 7466 Chesterfield, Apartment C, Dallas Texas, 75237. Mr. Allen will not make any change in his residence without the advance approval of the mental health providers and the final approval of the U.S. Probation Officer.

2. Mr. Allen shall not leave the judicial district without the permission of the court or U.S. Probation Officer.

3. Mr. Allen shall participate in mental health treatment services as directed by the probation office until successfully discharged. These services may include medications prescribed by a licensed physician.

4.  Mr. Allen shall comply with psychiatric treatment as directed by the treatment team and the U.S. Probation Office, which may include oral and injectable psychotropic medications if prescribed.

5.  Mr. Allen shall not change mental health providers without advance approval of the U.S. Probation Officer.

6.  While Mr. Allen is in outpatient counseling, he may be admitted to an inpatient facility or placed in a crisis stabilization facility should his treating clinicians or U.S. Probation Officer deem it necessary for his safety or the safety of the community.

7.  Mr. Allen shall not commit any violations of any federal, state or local criminal laws. Mr. Allen shall notify his U.S. Probation Officer within 72 hours if he is arrested or questioned by any law enforcement officer.

8.  Mr. Allen shall abstain from the use of any alcohol or illegal drugs.

9.  Mr. Allen shall submit to random urinalysis testing at the direction of the U.S. Probation Officer.

10. Mr. Allen shall not have in his possession, at any time, any actual or imitation firearms or other deadly weapons.

11. Mr. Allen shall permit a probation officer to visit him at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

12. Mr. Allen shall waive his rights to confidentiality regarding his mental health treatment, and to allow sharing of information with the USPO and with other mental health treatment providers, who will assist in evaluating his progress.

13. Mr. Allen shall meet with his supervising probation officer as directed, but no less than once per month.

14. Mr. Allen's failure to adhere to any of these conditions may result in him being located, taken into custody, and subsequently reviewed by the federal court of jurisdiction for suitability for continued release to the community.

15. The U.S. Probation Office shall prepare and deliver to the court a status report regarding Mr. Allen's compliance with his conditions of release quarterly or sooner should his treating clinicians or the U.S. Probation Officer determine that matters concerning Mr. Allen's compliance, conduct, or treatment should be brought to the attention of the court.

The court will review these terms and conditions periodically and make such changes to or eliminations of them as appropriate; and either party may move the court to modify or revise the terms and conditions of release herein set forth. These terms and conditions are not meant to be permanent or impermissibly prolonged.

**It is so ordered** this 26th day of June, 2015.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge